# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lance Phillip Wickner, | Civ. No. 09-1219 (DWF/JJK) |
| Plaintiff, | |
| v. | |
| Mary McComb, Kent Grandlienard, Steve Ayers, Mike Green, and Natalie Leseman, all sued individually, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Lance Phillip Wickner, #204147, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082-1117, *pro se*.

Jackson Evans, Minnesota Attorney General's Office, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 13), and Defendants' Motion for Summary Judgment (Doc. No. 16). The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendants' motion be granted and Plaintiff's motion be denied.

## BACKGROUND

Plaintiff is currently, and was during all times relevant to the issues addressed in this action, confined in the Oak Park Heights Correctional Facility. (Doc. No. 1, Compl. ¶ 1.) He is serving a sentence imposed after he pleaded guilty in May 1999, to a charge of second-degree criminal sexual conduct for an offense involving his ten-year-old niece. (Doc. No. 20, Aff. of Ricardo Lopez ("Lopez Aff.") ¶ 3, Attach. 1, Exs. B & C.) While serving his sentence in Oak Park Heights, Plaintiff has been disciplined on numerous occasions for sexual misconduct. (Lopez Aff. ¶ 4, Attach. 1, Ex. D; *Id.*, Attach 2, Ex. E.) On multiple occasions, Plaintiff has exposed himself to female prison personnel and attempted to have female prison personnel watch him masturbate. (*Id.*, Attach 2, Ex. E.) Defendants are various officials employed by the Minnesota Department of Corrections ("DOC"), who work at the Oak Park Heights facility. (Compl. ¶¶ 2-8.) In this action, Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights by refusing to deliver twenty-one photographs that Plaintiff ordered from ConvictHouse.com ("ConvictHouse"). (Compl. ¶¶ 11, 15.)

On March 4, 2009, Plaintiff ordered thirty photographs from ConvictHouse. (Compl. ¶ 9.) Plaintiff alleges that the photos were advertised as "non-nude." (Compl. ¶ 10.) ConvictHouse is a company that advertises to inmates and offers to send inmates "hot pictures" in exchange for money. (Doc. No. 21, Aff. of Mary McComb ("McComb Aff.") ¶ 7, Attach. 1, Exs. A, B.) On March 17, 2009, Defendant Natalie Leseman, a DOC employee assigned to the Oak Park Heights

mailroom at the time, inspected a piece of incoming mail from ConvictHouse to Plaintiff and discovered that it contained thirty erotic photographs of women. (Doc. No. 19, Aff. of Natalie Leseman ("Leseman Aff.") ¶ 5.) DOC Directive 302.020, which governs the processing of incoming and outgoing mail at all DOC facilities, states that any incoming mail containing contraband is not authorized. (*Id.*, Attach. 1, Ex. A.) DOC Directive 301.030 defines "nudity" as "the showing (including a see-through covering) of human male or female genitals, anus or pubic area or the showing (including a see-through covering) of the female breast or a substantial portion of the breast below the top of the nipple. Examples of see-through coverings that are not permitted include 'pasties,' lace, mesh, and body paint through which the covered area is showing." (McComb Aff. ¶ 8, Attach. 1, Ex. C.) Leseman determined that twenty-two of the thirty photographs were contraband as defined by the DOC and prevented their delivery to Plaintiff. (Leseman Aff. ¶¶ 5-6.) Leseman gave Plaintiff notice of the determination. (*Id.* ¶ 6, Attach. 1, Ex. B.) Specifically, Leseman explained that the photographs were "sexually explicit material/nude photos/pictures/drawings." (*Id.*) This justification for non-delivery corresponds to one of eleven reasons that mail is considered "unallowable" under DOC Directive 302.020. (*Id.* ¶ 2, Attach. 1, Ex. A.)

After he received the notice of non-delivery of the photographs from ConvictHouse, on March 17, 2009, Plaintiff complained to the mailroom supervisor, Defendant Mike Green, about Leseman's decision through the use of

a DOC Offender Kite Form. (Compl. ¶ 12; Aff. of Michael Green ("Green Aff.") ¶ 2, Attach. 1, Ex. A.) Plaintiff disputed that the photographs were "nude" according to DOC Directive 301.030. (*Id.*) Green independently reviewed the photographs and responded to Plaintiff on March 20, 2009, stating that he had reviewed the photographs and determined that "they do meet the DOC's criteria for nudity. Feel free to appeal to the Correspondence Review Board." (*Id.*)

On March 23, 2009, Plaintiff appealed Green's decision upholding the non-delivery of the photographs ConvictHouse sent him to the Correspondence Review Board. (Compl. ¶ 14; McComb Aff. ¶ 10, Attach. 3, Ex. F.) The Board reviewed the twenty-two photographs on April 27, 2009, and found that twenty-one of them depict nudity according to DOC Directive 301.030. (McComb Aff. ¶ 11, Attach 3, Ex. G.) The Board returned the one non-offending photograph to Plaintiff. (*Id.*) On May 26, 2009, Plaintiff filed the instant action, claiming that the denial of the above-referenced photographs violates his First and Fourteenth Amendment rights. (Doc. No. 1.) Plaintiff and Defendants have since both moved for summary judgment on all claims. (*See* Doc. Nos. 13, 16.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper when no genuine issues of material fact exist and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence could lead a reasonable jury to

4

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party "may not rest upon mere allegations or denials," but must allege specific facts showing that a genuine issue remains for trial. *Anderson*, 477 U.S. at 256.

II. **Analysis**

   A. **Plaintiff's First Amendment Claim regarding Mail from ConvictHouse**

In his Complaint, Plaintiff claims that Defendants' non-delivery of twenty-one pictures that he ordered from ConvictHouse violated his First Amendment rights. Defendants assert that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law with respect to this claim. Plaintiff opposes Defendants' motion and seeks summary judgment in his own favor on this claim, asserting that the photographs Defendants confiscated are not nude according to DOC Directive 301.030 and, therefore, not unallowable as contraband.

When an inmate raises a facial challenge to a prison regulation, courts acknowledge that prisoners retain certain constitutional rights, but grant deference to the determinations of prison officials in the administration of their facilities. "'[L]awful incarceration brings about the necessary withdrawal or

5

limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  However, "[i]t is settled law that convicted persons 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests[,]" so that prison officials, rather than courts, determine the appropriate course of prison administration.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Thus, "[i]n the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995) (quoting *Pell*, 417 U.S. at 822).

Accordingly, "[r]egulations involving the review of incoming mail in prisons need only be 'reasonably related to legitimate penological interests.'" *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 985-86 (8th Cir. 2004) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989), and applying the *Turner* factors to an inmate's First Amendment challenge under the Free Speech Clause to prison officials' refusal to deliver a publication he received in the mail).  To determine whether the regulation at issue here has a reasonable relationship to a legitimate penological objective, this Court considers four factors: (1) whether a valid,

6

rational connection exists between the regulation and the legitimate interest asserted to justify it; (2) whether alternative means of exercising the right remain available to inmates; (3) the extent to which accommodating the asserted right will impact guards and other inmates, as well as allocation of prison resources; and (4) whether ready alternatives to the regulation at issue are apparent. *See Turner*, 482 U.S. at 89-91; *Thongvanh*, 17 F.3d at 259. Prison officials do not have to meet all four or even a majority of the *Turner* factors to defend a prison policy because they are simply factors to consider in determining whether the regulation is reasonably related to legitimate penological interests. *Beard v. Banks*, 548 U.S. 521, 533 (2006). Thus, to the extent Plaintiff raises a facial challenge to the regulation governing incoming mail, this Court must consider these factors to determine whether the policy is constitutional.

Plaintiff also appears to be raising an as-applied challenge to the regulation. Several courts of appeals have held that "[t]he *Turner* analysis applies equally to facial and 'as applied' challenges." *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004); *Flagner v. Wilkinson*, 241 F.3d 475, 484 n.5 (6th Cir. 2001) ("Under *Turner*, [a] plaintiff[] may pursue as-applied challenges to facially valid prison regulations."); *United States v. Reid*, 369 F.3d 619, 626 (1st Cir. 2004) (citing *Thornburgh* and *Turner* in discussing an "as-applied challenge" under the First Amendment); *see also Lindell v. Huilbregtse*, 205 F. App'x 446, 448-49 (7th Cir. 2006) (noting, in the context of an "as-applied" free-speech claim, that under the First Amendment, prison officials may restrict

7

correspondence between inmates and citing *Turner*). At the summary-judgment stage, the issue with such as-applied challenges is whether a genuine dispute exists as to whether prison officials had legitimate reasons to apply the governing regulation in the particular circumstances of the prisoner's case. *See Hargis v. Beauchamp*, 312 F.3d 404, 410-11 (9th Cir. 2002) (considering whether a jury could reasonably conclude that prison officials acted unreasonably in applying a policy prohibiting certain coercive communications with prison officials to an inmate's statements allegedly intended to coerce an officer into not enforcing a prison rule). Thus, to the extent Plaintiff raises an as-applied challenge to Defendants' decision to confiscate the twenty-one photographs from ConvictHouse, the question is whether a jury could reasonably conclude that officers had a legitimate reason to refuse to forward the photographs to Plaintiff.

### 1. Facial challenge

The regulation at issue here is Minnesota DOC Policy 301.030, which classifies published and non-published materials featuring or containing pictorial depictions of "nudity" as contraband. (McComb Aff. ¶ 8, Attach 1, Ex. C at 2.) Policy 301.030 defines nudity as "the showing (including a see-through covering) of human male or female genitals, anus or pubic area or the showing (including a see-through covering) of the female breast or a substantial portion of the breast below the top of the nipple. Examples of see-through coverings that are not permitted include 'pasties,' lace, mesh, and body paint through which the covered area is showing." (*Id.*) DOC Policy 302.020—which is relevant to the

officers' conduct but not directly challenged by Plaintiff—states that incoming mail is not authorized if it contains contraband. (Leseman Aff., Attach. 1, Ex. A at 4.)

Protecting the safety and security of a correctional institution and protecting the safety and security of specific individuals or the general public are legitimate penological interests. *See Pell*, 417 U.S. at 823 (discussing legitimate interests of correctional facilities, including deterring crime, quarantining criminal offenders for protective and rehabilitative purposes, and internal security). In addition, courts have found that preventing inmates from acting out sexual aggression toward other inmates or prison personnel is also a valid penological goal. *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993). In support of Defendants' summary-judgment motion, Mary McComb, the Associate Warden of Administration at the Oak Park Heights facility, testifies in her affidavit that the DOC created its policy limiting offender access to nude photographs because such material (1) would interfere with sex offender rehabilitation; (2) could create a hostile work environment for prison staff who would face regular exposure to offensive images and increased sexual harassment by offenders; and (3) would lead to an increase in offender assaults, threatening the safety and security of DOC facilities. (McComb Aff. ¶¶ 4-6.)

Specifically, Associate Warden McComb explains that state facilities house a large population of sex offenders and that once sexually explicit materials enter a facility, the materials infiltrate the entire prison. (*Id.* ¶ 5.) This, she asserts,

makes it difficult for sex-offender-treatment staff to keep close control over what explicit images an offender may view as part of the treatment process, therefore, interfering with sex-offender rehabilitation. (*Id.*) She also explains that allowing sexually explicit materials creates a security risk because offenders use sexually explicit materials to barter for items, and if they are not paid for any resulting debt created in the transaction, they may resort to assaulting the debtor to enforce the debt. (*Id.* ¶ 4.) Such assaults endanger participants, bystanders, and staff members who have to break up the fights. (*Id.*) In addition, Associate Warden McComb asserts that "prevalent sexually explicit material in the prison population reinforces the viewing of women as objects, thereby undermining the authority of female correctional officers." (*Id.*) And allowing sexually explicit images creates a hostile work environment for prison staff because they encounter the explicit images when searching cells, receive comments from inmates who compare the female staff to the images, and observe inmates use the images to engage in sexual misconduct in front of female staff or otherwise sexually harass female staff. (*Id.* ¶ 6.) Plaintiff does not contest that the reasons provided by Defendants for their policy are legitimate or that that they are reasonable. Based on the above case law, and the explanation provided by Associate Warden McComb, this Court concludes that there is a rational connection between DOC Policy 301.030 and the legitimate penological interests in maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards. Therefore, the first *Turner* factor is met.

Regarding the other *Turner* factors, the regulation does not foreclose all avenues for an inmate to receive materials depicting nudity or written descriptions of sexual activity. Associate Warden McComb explains as follows:

> Publications are banned only if they feature nudity or written depictions of sexual activity. However, nude photos not in a publication are always banned under the policy. To maximize expressive opportunities, "nudity" is defined narrowly so that only photos showing genitals, the anal or pubic areas, or a substantial portion of the female breast are considered to contain nudity. Thus, offenders can have access to photos showing cleavage; photos of buttocks and thongs that do not show the anal and genital areas; and photos of breasts with bikini tops that are not see-through. All pictorial depictions of sexual activity are banned regardless of whether they are a prevalent part of a publication.

(McComb Aff. ¶ 3.) And eliminating the policy preventing inmates from receiving nude photographs, thus "accommodating the asserted right," *Turner*, 482 U.S. at 90, would likely have an impact on the guards and other inmates. As explained above, bartering might increase resulting in an increase of physical assaults with the facility, and increased occurrence of sexual harassment toward staff whereby the nude photographs would serve as the primary catalyst would be likely. In addition, Plaintiff has offered no alternative regulation that would accommodate his right at a minimal cost to the valid penological interests at play.

Having considered the *Turner* factors, this Court concludes that the regulation at issue here has a reasonable relationship to a legitimate penological objective, and therefore the regulation is valid. Plaintiff has not shown that a genuine issue of material fact exists that could make a jury determine otherwise. Therefore, this Court recommends that Defendants are entitled to summary

judgment on Plaintiff's First Amendment claim to the extent he raises a facial challenge to the prohibition on nude photographs in DOC Policy 301.030.

### 2. As-applied challenge

The Court reaches a similar result in regard to Plaintiff's as-applied challenge. The starting point for Plaintiff's as-applied challenge to restriction on his access to non-published nude photographs, much like for his facial challenge, is whether the regulation bears a rational relationship to a legitimate penological interest and the four *Turner* factors for reasonableness. *Lyons v. Grossheim*, 803 F. Supp. 1538, 1552 (8th Cir. 1992). Courts must not uphold regulations that are "clearly broader in scope or significantly more burdensome in effect than reasonable alternatives." *Id.*

As explained above, this Court concludes that when considering the *Turner* factors, the regulation at issue has a reasonable relationship to a legitimate penological objective. The question then becomes whether a jury could reasonably conclude that the prison officials had a legitimate reason to refuse to forward the photographs to Plaintiff based on that regulation. In other words, in conducting the as-applied analysis, this Court must determine whether there is a genuine dispute as to whether the photographs in issue implicated the legitimate penological interests in maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards. Here, this Court concludes that there is no genuine dispute, and that as a matter of law, the prison officials were reasonable in thinking that denying Plaintiff access to the

photographs in issue would advance the legitimate penological interests in maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards.

Plaintiff's entire argument focuses on whether the photographs were encompassed by the policy (i.e., whether the photographs were "nude" photographs). In other words, Plaintiff wants the Court to decide how well the prison officials applied their own policy. This, however, is not the standard for deciding whether Plaintiff's constitutional rights have been violated. Rather, "the proper question is whether in the particular circumstances of Plaintiff's case, prison officials had legitimate reasons to apply the governing regulation, independent of whether the regulation was ultimately deemed violated." *Clark v. Mason*, No. C04-1647-JCC, 2007 WL 2417154, at *2 (W.D. Wash. Aug. 20, 2007). "In the posture of a motion for summary judgment, the question is whether a jury could reasonably conclude that prison officials acted unreasonably in applying the DOC policy to [the photographs] in light of the asserted penological interests." *Id.*

After reviewing the facts in the light most favorable to Plaintiff, this Court concludes that no reasonable jury could find that prison officials here acted unreasonably in applying DOC Directive 301.030. As explained above, Defendants have given several valid penological interests implicated by prisoner access to sexually explicit photographs. And this particular Plaintiff is serving a sentence for second-degree criminal sexual conduct and has an extensive

13

disciplinary history of sexual misconduct in prison, including repeatedly exposing himself to female DOC staff. The record here reflects that the prison officials' decision to deny Plaintiff access to sexually explicit materials was not to suppress expression, but to advance legitimate concerns about institutional security, to facilitate inmate rehabilitation, and to prevent sexual harassment of DOC staff. And based on Plaintiff's behavioral history, it was reasonable for prison officials to think that denying Plaintiff access to sexually explicit photographs would advance penological interests. Under these circumstances, and based on the Court's review of the evidence, there is no genuine dispute about whether the photographs in issue implicated the valid penological interest in proscribing sexually explicit photographs, or whether the Defendants' actions in confiscating the photographs was reasonable. Here, like in *Clark*, Plaintiff simply demonstrates that the photographs he seeks were "continually skirting the line demarcating acceptable prisoner material, and therefore undoubtedly implicated DOC policy, even if it did not always violate it." *Clark*, No. 2007 WL 2417154, at *3. Because the confiscation of the photographs at issue that Plaintiff had ordered, being reasonably related to legitimate penological interests, does not give rise to a First Amendment violation, this Court recommends that Defendants' summary judgment motion with respect to Plaintiff's First Amendment claims should be granted.

## B. Plaintiff's Fourteenth Amendment Claim

Both Plaintiff and Defendants move for summary judgment on Plaintiff's claim that Defendants violated his Fourteenth Amendment rights. In Plaintiff's Complaint, he alleges that "[t]he actions of Defendants . . . in confiscating twenty one non-nude photo's violated the First Amendment and Fourteenth Amendment." (Compl. ¶ 16.) In Plaintiff's summary-judgment motion, he requests damages for the "denial of the plaintiff's First Amendment rights and denial of the due process of law." (Doc. No. 13, Pl.'s Mot. for Summ. J. 1.) The only elaboration that Plaintiff has given in regard to his due-process claim is the following that was provided in his memorandum in support of his motion:

> When the plaintiff wrote a dispute to defendant Green and an appeal to defendants McComb, Grandlienard and Ayers, their failure to reverse defendant Leseman's action of rejecting 21 non-nude photographs violated plaintiff's right to due process of law.

(Doc. No. 14 at 13.) In response, Defendants argue that Plaintiff had no liberty interest in receiving non-published nude images through the mail and, if he did have such an interest, the DOC's appeals process adequately protected it. Although it is unclear whether Plaintiff has raised both procedural and substantive due-process claims, this Court will address both procedural and substantive due process here.

### 1. Procedural due process

The Due Process Clause guarantees that certain interests will not be deprived without giving the individual an opportunity to be heard. To claim the

15

protections of the due-process clause, however, a prisoner must first enumerate a recognized liberty interest. *See Snodgrass v. Robinson*, 512 F.3d 999, 1003 (8th Cir. 2008). A recognized liberty interest may arise from the United States Constitution or from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A prisoner has a liberty interest in freedom from restraints that "impose[] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff asserts that his due-process rights were violated because DOC officials, during the appeal process, failed to reverse Defendant Leseman's decision to withhold delivery of twenty-one photographs that Plaintiff had ordered. Throughout Plaintiff's submissions, he asserts that Defendants did not consistently apply DOC 301.030 to all the photographs that he ordered from ConvictHouse, and that twenty of the twenty-one photographs withheld should not have been classified as "nude." Therefore, it appears as though Plaintiff is arguing that he suffered a violation of his procedural due-process rights because Defendants did not follow DOC regulations when they determined on appeal that the photographs in issue were "nude" under the regulations. Plaintiff's claim, however, cannot survive as a matter of law because even if the Court assumes that the prison officials did not comply with their regulation, "a violation of prison regulations in itself does not give rise to a constitutional violation." *Bonner v. Fed. Bureau of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006); *see also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional

liberty interest in having state officers follow state law or prison officials follow prison regulations."). Therefore, to the extent that Plaintiff is arguing that Defendants did not follow the prescriptions set forth in the prison's regulation, Plaintiff's constitutional claim fails.

To the extent Plaintiff alleges that the response to his appeal violated his Constitutional rights because he was not provided proper procedural safeguards, his claim fails as well. "[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by*, *Thornburgh*, 490 U.S. 401. Such minimal procedural safeguards require that an inmate be notified of the rejection of the mail, have a reasonable opportunity to protest the decision, and be given an opportunity to appeal the decision to a prison official who was not involved in the original censorship decision. *Id.* Here, it is undisputed that Defendant Leseman provided Plaintiff notice that the photographs in issue would not be delivered to him. In that notice, Leseman noted that the photographs were "sexually explicit material/nude photos/pictures/drawings." (Leseman Aff. ¶ 6, Attach. 1, Ex. B.) The notice also stated the following:

> If you choose to dispute this decision, you may appeal to the Mail Room Supervisor within 15 days of receipt of this notice . . . . A second appeal may be requested by writing the Correspondence Review Authority within 15 days of receipt of the Supervisor's response.

(*Id.*) Therefore, Plaintiff was given an opportunity to appeal as required, and in

17

fact, he did so.  After he received the notice of non-delivery of the photographs from ConvictHouse, Plaintiff first complained to the mailroom supervisor, Defendant Mike Green.  Green independently reviewed the photographs and determined that "they [met] the DOC's criteria for nudity."  (Green Aff. ¶ 2, Attach. 1, Ex. A.)  Green also advised Plaintiff that he could appeal to the Correspondence Review Board, which Plaintiff did.  The Board reviewed the twenty-two photographs at issue and found that twenty-one of them depicted nudity according to DOC Directive 301.030; the Board returned the one non-offending photograph to Plaintiff.  Therefore, based on the record, no reasonable jury could conclude that Plaintiff was denied notice that the photographs in issue would not be delivered, or an opportunity to appeal that decision.  As a matter of law, all of the due-process safeguards required by *Procunier* were satisfied, and Defendants are entitled to summary judgment as to Plaintiff's procedural-due-process claim.

### 2. Substantive due process

To the extent that Plaintiff also asserts that Defendants violated his substantive-due-process rights under the Fourteenth Amendment, Plaintiff's claim is groundless.  "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience."  *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007) (quotations omitted).  The

fundamental rights protected by the substantive component of the Due Process Clause are those "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (quoting *Terrell v. Larson*, 396 F.3d 975, 978 n. 1 (8th Cir. 2005) (en banc)).

As stated above, Plaintiff has no liberty interest in having the prison officials follow prison regulations. *See Bonner*, 196 F. App'x at 448; *Phillips*, 320 F.3d at 847. In other words, Plaintiff has no liberty interest in having the prison officials classify the photographs properly in accordance with DOC Directive 301.030. Therefore, Defendants did not violate Plaintiff's constitutional rights. And further, nothing in the record would support a conclusion that any of Defendants' actions with respect to the confiscation of the photographs or the determinations made to continue to withhold the photographs were shocking to the contemporary conscience. For these reasons, this Court recommends that Defendants be granted summary judgment on Plaintiff's claims that Defendants actions violated his right to substantive due process under the Fourteenth Amendment.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13), be **DENIED**;

2. Defendants' Motion for Summary Judgment (Doc. No. 16), be

**GRANTED**; and

3. This case be **DISMISSED WITH PREJUDICE**.

Date: July 23, 2010

                                          *s/ Jeffrey J. Keyes*
                                          JEFFREY J. KEYES
                                          United States Magistrate Judge

Under D. Minn. Loc. R. 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 6, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.